JjSAUNDERS, Judge.
Defendant, Bobby James Lee, was charged with two (2) counts of theft over $500.00, a violation of LSA-R.S. 14:67. After a three day jury trial, a six (6) person jury returned a verdict of guilty on one count of theft from Herman Ortego. On the second count, the jury found Lee not guilty of theft from Belinda Estes. Lee was sentenced to two and one-half (2½) years at hard labor with the Louisiana Department of Corrections and was ordered by the trial court to make restitution. It is from this conviction and sentence that defendant appeals.

FACTS

Herman Ortego received approximately $52,000.00 from an insurance settlement after his home burned. Defendant was dating Belinda Estes, Ortego’s daughter, and planned to marry her. Realizing that this settlement could affect his receipt of SSI benefits and wanting to avoid possible adverse effects, Ortego endorsed the checks and deposited them in an account opened by the defendant. The record contains conflicting testimony as to who had the idea to put this money in defendant’s name. Eventually the relationship between Lee and Estes soured and a parting of ways occurred.
Jj/The factual issues are whether defendant had authority to spend the sums he did before his falling out with Estes and whether he returned the money to Estes after closing the accounts. The evidence as to what transpired with the money following the breakup of Lee and Estes is rather contradictory and comes almost exclusively from the parties. Defendant claims that the bulk of the money was returned to Belinda Estes, Ortego’s daughter, while Estes and Ortego claim that the defendant did not return any of the money.

ERRORS PATENT

LSA-C.Cr.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
*271 In accordance with this article, all appeals are reviewed for errors patent on the face of the record. A review of this record reveals no errors patent.

ASSIGNMENTS OF ERROR NOS. 1, 2 AND 4

These three assignments of error deal with the sufficiency of the evidence. Defendant briefed these assignments in one argument, therefore, they will be discussed together. Defendant contends that the verdict is contrary to the law and evidence. In support of this contention, defendant alleges that (1) the state failed to prove the requisite criminal intent and (2) the evidence showed the victim consented to the transfer of his property to the defendant.
Under the Jackson v. Virginia standard of review, when the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
lain order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
The defendant was convicted of one count of theft in excess of $500.00, a violation of LSA-R.S. 14:67, which provides in pertinent part, as follows:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
LSA-R.S. 14:10 provides as follows:
Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
The victim, Herman Ortego, testified that the money he received from the insurance company was deposited in defendant’s name. Ortego testified that when he received this money, he realized that it could affect his SSI benefits. According to Ortego, it was his understanding that the arrangement with the defendant was: (1) the money in the account was Ortego’s and (2) when Ortego needed money, the defendant would bring the money to him. Ortego’s testimony is corroborated by his daughter, Belinda Estes.
Ortego did not authorize the defendant to use the money in the account as his own, but did allow the defendant to use some of the money to buy a truck. Ortego considered this transaction a loan which would be repaid by the defendant. At times, Ortego’s testimony is unclear and the record does not clearly reflect whether Ortego understood the full implication of depositing his money under the defendant’s name. Ortego is elderly, has only a fourth grade education and is in poor health.
Defendant, Bobby James Lee, testified that Belinda Estes talked her father into putting the insurance settlement in defendant’s name. Estes contradicted this testimony claiming this transaction was defendant’s idea. According to defendant’s understanding, the money was for Ortego when he needed something, and “I was free at it, too. If I wanted something out of there I could go *272 ahead and take it and do what I want to do with it.”
Defendant admitted that out of the $52,-000.00, he used $100.00 for clothes for UOrtego and $200.00 for a hair piece for Ortego. These are the only funds defendant gave to Ortego out of the insurance proceeds. Defendant admitted using the money in the account by cashing numerous checks; by paying for extensive dental work; by paying personal debts; and by opening a certifícate of deposit in his daughters’ name for $29,-000.00.
Defendant claimed that his closing of the original account in Mamou and the transferring of the $29,000.00 to Federal Savings was Estes’ idea. Defendant further testified that he returned all of this money to Estes after their relationship ended. On cross-examination, defendant admitted he knew the money was Ortego’s and not his. On re-direct, defendant testified that both Ortego and Estes were aware of the various expenditures and transactions, and neither made any complaints.
Both Estes and Ortego claim the defendant did not return any of the money and that they did not approve any transfer of funds and were not even aware that defendant was transferring funds.
According to defendant’s argument, an owner who suggests and actively urges a criminal design has consented to the taking. State v. Johnson, 408 So.2d 1280 (La.1982). Johnson further states in dicta:
“The reason is obvious, viz.: The taking in such cases is not against the will of the owner, which is the very essence of the offense, and hence no offense, in the eye of the law, has been committed. The offender may be as morally guilty as if the owner had not consented, but a necessary ingredient of legal guilt is wanting.” See United States v. Whittier (1978), 5 Dill 35, Fed.Cas. No. 16,688.”
Id. at 1283. This portion of the Johnson case refers to whether sufficient probable cause exists to issue a search warrant. Id. Johnson then discussed State v. Natalie, 172 La. 709, 135 So. 34 (La.1931), in which the Louisiana Supreme Court rejected defendant’s contention that the property owner consented to the taking. The supreme court emphasized the owner did nothing to induce or tempt defendant to commit burglary. Id.
Johnson held that in order to consent to the theft of property, an owner must do more than passively assent to a taking; where criminal intent or design is not suggested by an owner, then he may facilitate taking property to detect the thief. 408 So.2d at 1283.
| .^Defendant cites State v. Langford, 467 So.2d 41 (La.App. 4th Cir.1985) which upheld the proposition that:
“The criminal design and intent to take the goods originated, independently, in the minds of those who took them and Bacon [the owner] did no more than passively assent to the carrying out of their designs.” State v. Natalie, supra, 135 So. at p. 36.
State v. Johnson, supra, 408 So.2d at 1283. However, Langford, affirmed on appeal to the Louisiana Supreme Court, 483 So.2d 979 (La.1986), held defendant’s actions in violation of LSA-R.S. 14:67 and that they demonstrated both (1) a taking without consent and (2) an intent to permanently deprive. Lang-ford also held that:
“One who takes another’s property intending only to use it temporarily before restoring it unconditionally to its owner (i.e., one who normally is found not to have an intent to steal) may nevertheless be guilty of larceny if he later changes his mind and decides not to return the property after all. LaFave & Scott, Criminal Law, § 88 (1972).
LaFave, supra, suggests that to counter inferred or proven intent to permanently deprive, a defendant must show both that he had the intent to return the property within a reasonable time, and that he had a substantial ability to do so.”
(Footnote omitted.)
Id. at 985.
In the instant case, the testimony of Estes and Ortego indicates that the defendant did not exhibit either (1) an intent to return the property within a reasonable time or (2) that defendant had the substantial ability to return such property. Although defendant tes *273 tified that he returned the money to Estes, he offered no documentation verifying this fact, and his testimony is contradicted by both Ortego and Estes.
Defendant cites State v. McBride, 492 So.2d 222 (La.App. 4th Cir.1986) for the contents of the theft statute at LSA-R.S. 14:67. However, this case was reversed by the Louisiana Supreme Court at 504 So.2d 840 (La. 1987). In McBride, the defendant took jewelry worth more than $1,000.00 from-his sister and pawned it to borrow $100.00. He gave the pawn ticket to his mother and explained what he had done. McBride is inapplicable to the instant case because the supreme court found insufficient evidence to support McBride’s conviction for theft, finding the element of “intent to deprive” lacking; the case was remanded for retrial on unauthorized use of a movable.
State v. Hoffer, 420 So.2d 1090 (La.1982) involved the use of circumstantial | (¡evidence to prove intent to defraud in the prosecution for theft in excess of $500.00. Although the defendant in Hoffer may have misrepresented himself at an automobile auction as a licensed and bonded dealer, the state failed to prove an intent to deprive. In Hoffer, the court found insufficient evidence of requisite intent because the evidence presented did not exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438.
The Third Circuit recently ruled on an analogous fact pattern in State v. Fuqua, 558 So.2d 740 (La.App. 3d Cir.1990). The Fuqua court held that the evidence was insufficient to support a theft conviction where the complaining witness testified that his instructions to defendant about how to use the checking account were unclear. This court found that the state did not meet its burden of proving beyond a reasonable doubt that the defendant took money without the victim’s consent or with the intent to permanently deprive the victim of the money. The victim and defendant in Fuqua were cohabiting; the charges were not brought -until the defendant broke off the relationship.
While the Fuqua case involves similar facts, it is not controlling. In Fuqua, the complaining witness, Miller,
“could not testify that he instructed the defendant not to make a check out to herself or for an amount greater than the purchase price. Furthermore, Miller testified he could not assert that defendant actually derived any money from utilizing the checks in the manner that she did. He admitted that as far as he knew defendant may have spent all the money derived from the checks on household expenses.” Id. at 743.
This factual situation in the Fuqua case was uncontradicted and did not support a conviction of theft.
In the present case, the jury had the testimony of Belinda Estes and Herman Ortego to support a conviction of theft in excess of $500.00. While the testimony of these -witnesses is contradicted by the defendant, it is the jury’s function to determine which version of the facts they accept. The triers of fact found the testimony of Ortego and Estes more credible than the defendant’s testimony and the determination of the amount of credibility to be given to a particular witness is a proper function of the jury.
The jury weighed the respective credibility of the witnesses in this case and under Jackson, this court should not second guess the jury’s credibility determination. Giving great weight to the triers of fact and reviewing the case under the strict limitations of Jackson, it is clear that the record contains sufficient evidence to support the conviction of theft of more than $500.00.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 3, 5 AND 6

By assignment of error number three, defendant contends that the trial court erred in not allowing defendant to introduce evidence to impeach the credibility of Herman Ortego. However, this assignment was not briefed on appeal and is, therefore, considered 17abandoned in accordance with Uniform Rules — Courts of Appeal 2-12.4.
By assignments of error numbers five and six, defendant contends that the trial court imposed an excessive sentence for a first offender, and the sentence was imposed fol *274 lowing an emotional speech by the trial judge. However, these assignments were not briefed on appeal and are, therefore, considered abandoned in accordance with Uniform Rules — Courts of Appeal 2.12-4.

CONCLUSION

For the foregoing reasons, the conviction and sentence of defendant, Bobby James Lee, are hereby affirmed.
AFFIRMED.
KNOLL, J., dissents with reasons.