842 So.2d 1244 (2003)
STATE of Louisiana, Appellee,
v.
Victor DURDEN, Appellant.
No. 36,842-KA.
Court of Appeal of Louisiana, Second Circuit.
April 9, 2003.
*1246 Peter J. Black, Indigent Defender Office by Kurt J. Goins, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, J. Thomas Butler, William J. Edwards, Assistant District Attorneys, for Appellee.
Before GASKINS, MOORE and KOSTELKA (Pro Tempore), J J.
KOSTELKA, Judge Pro Tempore.
Victor Durden ("Durden") was convicted as charged of armed robbery, La. R.S. 14:64, and as a second felony offender was sentenced to forty-nine and one-half years at hard labor without benefit of probation, parole or suspension of sentence. He now appeals his conviction and sentence. We affirm.

FACTS
On the morning of February 25, 2000, four men dressed in dark clothing and masks robbed the Greenwood Road Branch of the Hibernia Bank in Shreveport, Louisiana. The four men were seen immediately before the robbery in a car which had backed into a parking space just outside the bank. During the robbery, the men threatened the lives of the employees and customers of the bank. At least two of the men were armed with handguns. By chance, a fire truck had stopped at the bank, temporarily blocking the bank's parking area. One of the bank's customers fled the bank, ran to the fire truck and told the firemen that the bank was being robbed. Apparently frightened by the arrival of the fire truck, the driver of the car used by the four men sped away leaving the men afoot. After leaving the bank and seeing they had no transportation, the four men dispersed, but not before a red dye pack, placed by one of the tellers in the bag with some of the stolen money, exploded, staining the money and the clothing of the four robbers. Durden was seen coming from the bank and running behind Willis-Knighton North Hospital Complex located near the bank. A hospital security guard apprehended Durden in one of the hospital parking lots. Durden was wearing a white tee shirt that had a red stain *1247 on the front of it. He was the only suspect apprehended.
Durden gave the name Derrick Porter when apprehended, but he was correctly identified by his fingerprints. He gave a taped confession wherein he asserted that he went to the bank alone to rob it and the other armed men showed up. He denied any involvement with them.
On September 26, 2001, Durden was found guilty as charged of armed robbery by a unanimous jury. On June 3, 2002, he was sentenced as a second felony offender to forty-nine and one-half years at hard labor without benefit of probation, parole or suspension of sentence. This appeal ensued.

DISCUSSION

Sufficiency of the Evidence
Durden argues that his taped confession should be inadmissible since it was partially inaudible and without it there is no evidence to connect him to the crime. We disagree.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for insufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Bosley, 29,253 (La. App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. When thus viewed, the facts established by the direct evidence, and inferred from the circumstances established by that evidence, must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that a defendant is guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. William Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
Whether or not Durden's confession is admissible is determined by La. R.S. 15:450, which provides:
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
The trial court ruled that the tape was admissible even though parts were inaudible and the speed of the tape had somehow been altered. The detective who was present during the taping testified that the entire confession was on the tape. After the trial court ruled that the tape was admissible, the defense attorney asked, and the state agreed, that portions of the tape making references to an earlier robbery, Durden's gang affiliation, and his request for an attorney would not be played for the jury.
At trial, the defense did not object to the edited tape being heard by the jury and allowed it to be admitted into evidence. Based on the rationale in State v. Griffin, 618 So.2d 680 (La.App. 2d Cir.1993), writ denied, 625 So.2d 1063 (La.1993), we find the tape admissible since it was played for the jury without objection to its sound quality or contents.
It is well settled that a person cannot be convicted on his confession alone. State v. Hopkins, 35,146 (La. App.2d Cir.11/02/01), 799 So.2d 1234. This Court interprets this corroboration rule to require only that there be some evidence *1248 other than the confession that a criminal act was committed. State v. Cutwright, 626 So.2d 780, 783 (La.App. 2d Cir.1993).
This court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. Bosley, supra.
The jury heard the testimony of five bank employees, a bank customer, a firefighter, and four employees of the hospital where Durden was apprehended. There is nothing in the record to show that the witnesses contradicted one another or that the physical evidence contradicts their testimony. Thus, this Court is bound to uphold the findings of the trier of fact since the record supports the jury's finding. This assignment lacks merit.

Modification of the Verdict
Durden was denied a motion for "post verdict judgment of modification" (sic) and argues that his conviction should be reduced to first degree robbery since there was no evidence that he was ever armed. We disagree.
Louisiana C.Cr.P. art. 821 provides for a trial court to review the evidence and modify a jury's finding. It reads in pertinent part:
. . . .
C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
. . . .
In its review, the trial court is to make changes "only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency." State v. Harris, 36,036 (La.App.2d Cir.08/14/02), 823 So.2d 1054.
Durden desires that a rational person believe that he just happened to arrive at the bank at the same time and dressed in the same manner as the other armed and masked robbers. He wants that same rational person to find that while he did rob the bank, he did so alone and was not armed.
The state may prove a defendant guilty by showing that he served as a principal to the crime. La. R.S. 14:24; State v. Allen, 36,180 (La.App.2d Cir.09/18/02), 828 So.2d 622; State v. Smith, 513 So.2d 438 (La.App. 2d Cir. 1987). Under this theory, the defendant need not actually take anything or have personally held a weapon to be guilty of armed robbery. Allen, supra, citing, State v. Dominick, 354 So.2d 1316 (La.1978). A person who aids and abets another in a crime is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Demease, 33,047 (La.App.2d Cir.04/05/00), 756 So.2d 1264, writ denied, XXXX-XXXX (La.05/25/01), 792 So.2d 750. Though intent *1249 is a question of fact, it need not be proved as a fact, but it may be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983). Flight and attempt to avoid apprehension are circumstances from which the jury may infer guilty conscience. State v. Fuller, 418 So.2d 591 (La.1982); Demease, supra.
Although it is possible that a person could arrive at a bank at the very same time another armed group arrives to rob the same bank, the evidence does not even hint that one of the robbers was acting alone. The trial court heard the same evidence as the jury, evaluated the witnesses' testimony firsthand and heard Durden's recorded statement. The record simply does not support Durden's position. The evidence viewed in the light most favorable to the prosecution proves beyond a reasonable doubt that Durden was part of the group of armed robbers who stormed the bank and took money. This assignment lacks merit.

Use of Prior Guilty Plea
Durden argues that his prior conviction in California should not be used to convict him as a multiple felony offender since a district attorney, not the judge, conducted the plea colloquy when Durden waived his rights under Boykin v. State, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We disagree.
There are two statutory provisions in Louisiana that address how a guilty plea should be entered and how a defendant can contest the use of a prior conviction in subsequent proceedings.
Louisiana C.Cr.P. art. 556.1 gives the framework for the taking of a guilty plea or nolo contendere in felony cases. It reads:
A. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
(2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if financially unable to employ counsel, one will be appointed to represent him.
(3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
(4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.
B. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.
C. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney and the defendant or his attorney. If a plea agreement has been reached by the parties, the court, on the record, shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered.

*1250 D. In a felony case a verbatim record shall be made of the proceedings at which the defendant enters a plea of guilty or nolo contendere.
E. Any variance from the procedures required by this Article which does not affect substantial rights of the accused shall not invalidate the plea.
Louisiana R.S. 15:529.1(D)(1)(b) provides both the procedure for invalidating a plea and the burden and who bears it. It reads:
(b) Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
We consider Durden's motion to quash the use of two prior convictions, filed in response to the habitual offender bill of information, as a written response as required in La. R.S. 15:529.1(D)(1)(b). At the hearing on whether Durden should be sentenced as a third felony offender, the state had only the minute entry and no transcript of the guilty plea for one of the convictions. Since there was nothing to show that Durden had been apprised of his rights under Boykin, the trial court ruled it inadmissible.
As to the other conviction, the trial court found that Durden had knowingly and voluntarily entered a guilty plea and, therefore, sentenced him as a second felony offender. The court based its ruling on the transcript of the plea colloquy. It shows that with his court-appointed counsel in a California tribunal, an assistant district attorney, not the judge, gave information and questioned Durden when he entered a no contest plea to one count of possession of marijuana for sale. He was advised of all three rights he was waiving under Boykin. He was also specifically asked whether he had been given any promises other than the agreed sentence or if he had been threatened to enter the plea. He replied no to both of those inquiries.
Durden now raises an issue regarding the plea colloquy that he did not argue in the trial court. He argues that because the rights under Boykin were explained to him by the district attorney, rather than the judge, the plea was not voluntary. His rationale is that a prosecutor's presentation may have intimidated him and compelled him to enter the plea. However, before accepting the plea, that judge made an independent inquiry as to whether Durden understood the rights the district attorney explained. Durden answered yes. The judge also asked whether Durden had any questions before the plea was entered. Durden's response was no.
It is well-founded in our law that the grounds for an objection must be stated at the time the objection is made, and grounds therefor may not be urged for the first time on appeal. La.C.Cr.P. art. *1251 841; State v. Green, 390 So.2d 1253 (La. 1980); State v. Nicholas Johnson, 389 So.2d 372 (La.1980); State v. Woodard, 387 So.2d 1066 (La.1980); cf. Tyler v. Phelps, 643 F.2d 1095 (5th Cir.1981).
However, the issue of allowing an assistant district attorney to voice certain rights on the record has been addressed in our jurisprudence. In State v. Blackmon, 1999-391 (La.App. 3d Cir.11/03/99), 748 So.2d 50, writ denied, XXXX-XXXX (La.04/28/00), 760 So.2d 1174, the court found:
As the defendant alleges no misunderstanding as to the nature of the charge pled and the plea colloquy demonstrates that the defendant had adequate information on which to enter an intelligent and voluntary plea pursuant to [Boykin], we conclude that the mere fact that the trial court invited the assistant district attorney to read the charges and possible penalties is not reversible error.
Applying this rationale and scrutinizing both the transcript of the prior guilty plea and the hearing to invalidate it, we find that Durden did not meet his burden under La. R.S. 15:529.1(D)(1)(b) of showing that the plea was involuntary or unknowingly entered. Furthermore, Durden cannot now raise on appeal an issue not raised previously in the trial court. This assignment lacks merit.

Excessive Sentence
Durden argues that the sentence is constitutionally excessive and the trial court erred since it did not deviate from the mandatory minimum sentence provided in the habitual offender statute. We disagree.
When a defendant fails to file a La.C.Cr.P. art. 881.1 motion to reconsider sentence, an appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App. 2d Cir.02/25/98), 707 So.2d 164. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992).
A sentence is considered grossly disproportionate to the offense if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. La. Const. art. 1, § 20.
The definition of criminal conduct and the provisions of penalties for such conduct are purely legislative functions. State v. Carlos Johnson, 31,448 (La.App. 2d Cir.03/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653. Pursuant to this function, the Legislature enacted the habitual offender statute which has been held, on numerous occasions, to be constitutional. State v. Walter Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. Since that statute in its entirety is constitutional, the minimum sentences it imposes on repeat offenders are presumed constitutional. Id.
In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that he is exceptional, which, in this context, means that because of unusual circumstances, Durden is a victim of the Legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Carlos Johnson, supra. Additionally, in determining whether a defendant has met this burden, the trial judge must consider that the goals of the Habitual Offender Law are to deter and punish recidivism. Id. Finally, it must be emphasized that the departure downward from the *1252 minimum sentence prescribed under the Habitual Offender Law should occur only in rare instances. Id.
Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La.C.Cr.P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.04/04/01), 784 So.2d 714; State v. Charles Owens, 32,642 (La.App.2d Cir.10/27/99), 743 So.2d 890, writ denied, XXXX-XXXX (La.09/29/00), 769 So.2d 553. It would be an exercise in futility for the trial court to discuss the factors enumerated in Article 894.1 when the court has no discretion in sentencing a defendant. State v. Carlos Johnson, supra.
Although in State v. Dorthey, 623 So.2d 1276 (La.1993) the court found that a punishment required by statute can be shown to be an excessive punishment, the appellate courts of this state have recognized that declaring a sentence under the Habitual Offender Law constitutionally excessive should be a rare act, not a commonplace practice.
As this Court stated in State v. Ponsell, 33,543 (La.App.2d Cir.08/23/00), 766 So.2d 678:
Although, in State v. Dorthey, supra, the Louisiana Supreme Court stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. (Citations omitted.)
Prior to imposing sentence, the trial court reviewed a presentence investigation report and considered the facts of the case. The court noted that Durden had a prior felony conviction. While Durden's prior conviction was for drug charges, not a crime of violence, the information on him showed that he was a recognized gang member in California. Further, authorities here had identified him as one of the people who had come to Shreveport with a group to commit crime.
In reviewing the harm done to society, the evidence shows that there were nine bank employees, at least three customers and two young children on the bank premises during the robbery. At least two employees of the bank were physically abused and their lives threatened.
After close scrutiny of the record, it cannot be said that Durden has shown he is the exceptional defendant for whom downward departure from the mandatory statutory minimum sentence is required. This assignment lacks merit.

CONCLUSION
For the foregoing reasons, Durden's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.